UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

TURNING POINT FOUNDATION,      :
        ET AL.,                :
                               :
    v.                         :    Civ. No. 3:05-CV-895(AHN)
                               :
JOHN DESTEFANO,                :
        ET AL.                 :


RULING ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

The Turning Point Foundation and David Vieu (collectively
"Turning Point") operate single-family "recovery homes" in the
City of New Haven that seek to provide a clean, safe, drug- and
alcohol-free environment where persons in recovery can live
together in residential neighborhoods.  Turning Point claims
there must be at least fifteen residents in each home for the
residents to receive any therapeutic benefit.  A New Haven zoning
ordinance, however, prohibits that many unrelated persons from
living together in a single-family home in the zones in which
Turning Point's homes are located.

Turning Point, with the help of the Connecticut Fair Housing
Center, requested a variance from the zoning ordinance,[1] arguing

_____

    [1]  When Turning Point first requested its accommodation, New
Haven's zoning ordinance prohibited more than four persons who
were unrelated by blood or marriage from living together in a
single-family home.  After Turning Point and New Haven were
engaged in talks about the accommodation, New Haven amended the
zoning ordinance to allow up to eight persons who are unrelated
by blood or marriage to live together in a single-family home.
Turning Point, however, insists that eight is still too few
residents for them to achieve any therapeutic benefit from their
homes.

that the residents were disabled, but after negotiations, New Haven denied this request.[2] Thereafter, Turning Point and the Connecticut Fair Housing Center (collectively "Turning Point") brought this action against John DeStefano, the mayor of New Haven, and Andrew Rizzo, the director of New Haven's Livable City Initiatives (collectively "New Haven"), alleging violations of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, et seq., the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., the Rehabilitation Act (the "Rehabilitation Act"), 29 U.S.C. § 701, et seq., and the Connecticut Human Rights and Opportunities Act ("CHROA"), Conn. Gen. Stat. § 46a-64c.

Now pending before the court is Turning Point's motion for summary judgment [doc. # 164] on all those claims. Turning Point argues that summary judgment is appropriate because its residents are disabled within the meaning of the FHA, the ADA, the Rehabilitation Act, and the CHROA and New Haven failed to make a

---

[2] The parties have differing interpretations of Turning Point's requested accommodation and New Haven's response. New Haven claims that Turning Point requested an exemption from all applicable zoning ordinances, that is, the right to house as many persons at the homes as they wished. (See New Haven's Opp'n to Mot. for Summ. J. at 2, Ex. 1 & 2.) Turning Point asserts that its request was to be treated as a family or for no more than fifteen or sixteen residents in each home. New Haven also claims that it did not deny Turning Point's request outright but offered an alternative accommodation of up to ten residents in each of home and that Turning Point rejected this proposal. Turning Point asserts that New Haven's only accommodation was to allow eight residents in each home. These disputed factual issues will be resolved at trial.

reasonable accommodation to afford the residents an equal opportunity to live in the housing of their choice. In opposition, New Haven argues that there are disputed issues of material fact that prevent the court from granting summary judgment on these claims. The court agrees.

<u>DISCUSSION</u>

A municipality engages in impermissible discrimination in violation of the FHA, the ADA, the Rehabilitation Act, and the CHROA when it refuses to make changes to "traditional rules or practices if necessary to permit a person with handicaps an equal opportunity to use and enjoy a dwelling." <u>Shapiro v. Cadman Towers, Inc.</u>, 51 F.3d 328, 333 (2d Cir. 1995) (citation omitted). As with other discrimination statutes, the court applies a burden-shifting framework to determine liability under each of these statutes. <u>See, e.g.</u>, <u>Tsombanidis v. City of W. Haven</u>, 180 F. Supp. 2d 262, 282-83 (D. Conn. 2001); <u>AvalonBay Cmty., Inc. v. Town of Orange</u>, 256 Conn. 557, 591 (2001). Thus, to prove that New Haven failed to make a reasonable accommodation to its zoning ordinance, Turning Point must initially establish a prima facie case of discrimination by demonstrating that (1) its residents suffer from a disability within the meaning of the FHA and the other statutes; (2) it requested a "reasonable accommodation" from New Haven; and (3) New Haven denied that accommodation. <u>See Oconomowoc Residential Programs v. City of Milwaukee</u>, 300 F.3d

775, 783-84 (7th Cir. 2002); Jackan v. New York State Dep't of Labor, 205 F.3d 562, 566 (2d Cir. 2000). If Turning Point establishes its prima facie case, then the burden shifts to New Haven to prove that the requested accommodation was unreasonable or would present an undue hardship. Oconomowoc Residential Programs, 300 F.3d at 783-84; Jackan, 205 F.3d at 566.

Here, even assuming that Turning Point can establish the first and third elements of its prima facie case, summary judgment is not appropriate because, as Turning Point's own evidence shows, there is a genuine issue of material fact as to whether the requested accommodation for increased occupancy is necessary within the meaning of the FHA and other statutes. See, e.g., Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Tp. of Scotch Plains, 284 F.3d 442, 457 (3d Cir. 2002) (stating that a requested accommodation must be reasonable and necessary to afford disabled persons an equal opportunity to use and enjoy housing). In particular, Turning Point's evidence does not establish as an undisputed fact "that the desired accommodation will affirmatively enhance a disabled [person]'s quality of life by ameliorating the effects of the disability.'" Oconomowoc Residential Programs, 300 F.3d at 784. Even though one of Turning Point's experts testified that at least fifteen residents must live in each home because the homes are large and the residents require close proximity, even crowding, to prevent them

-4-

from relapsing, this assertion is contradicted by Turning Point's two other experts who testified that the quality of the program and sense of community, rather than the number of residents, determines the effectiveness of a recovery home, and that no minimum number of residents is required.[3] This conflicting evidence creates a disputed issue of fact as to whether Turning Point has established the reasonable accommodation requirement of its prima facie case, and summary judgment can be denied without considering the other arguments and evidence raised by the parties.

CONCLUSION

For these reasons, the court DENIES Turning Point's motion for summary judgment [doc. # 164].

SO ORDERED this 12th day of May, 2008, at Bridgeport, Connecticut.

_____/s/_____<br>
Alan H. Nevas<br>
United States District Judge

---

[3] See New Haven's Opp'n to Mot. for Summ. J. Ex. 22 (Riley Dep.), at 16:19-23; 18:1-12; 22:11-24 (testifying that "[t]here is no set number," that "[t]he variable is not the number of people, but it's how the program, how the house is run," and declining to give an opinion as to a minimum number of people needed to operate a therapeutic recovery home); Ex. 21 (Pacapelli Dep.), at 49:8-13 (testifying that there is no "documentation or literature that says that there's a need for a certain number of [residents]" in a recovery home in order for residents to receive a therapeutic benefit).